IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **FERNANDO G. MORGAN, JR., # B-83917,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 13-cv-641-GPM |
| ) | |
| **ST. CLAIR COUNTY/20th CIRCUIT,** ) | |
| **ILLINOIS DEPT. of CORRECTIONS** ) | |
| **FIELD SERVICES DEPT. SUPERVISOR,** ) | |
| **O'FALLON POLICE OFFICER,** ) | |
| **JESSE TEVERBAUGH,** ) | |
| **and ANGELA CHANEY,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claim arises from the circumstances of his August 2012 release from prison on mandatory supervised release ("MSR") after serving 50% of his sentence, and his subsequent arrest for another offense, which led to the revocation of his MSR.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

**The Complaint**

Plaintiff was originally sentenced to two years imprisonment for theft (Doc. 1, p. 9). Plaintiff had a relationship with Ms. Alysa Sherwood, and while he was incarcerated, she visited him on more than one occasion (Doc. 1, p.5). On August 15, 2012, Plaintiff was released from prison after serving 50% of his sentence, and placed on mandatory supervised release ("MSR"). *Id.* Upon his release, Plaintiff went to live in the residence of Ms. Sherwood (Doc. 1, p. 5). Plaintiff's housing arrangement was approved by Defendant Teverbaugh, a parole officer. *Id.*

However, at the time Ms. Sherwood was visiting Plaintiff in prison and when he was approved to reside in her home, she "allegedly" had an order of protection against Plaintiff. *Id.* Consequently, on September 26, 2012, Plaintiff was arrested for violating the order of protection ("OP") and for domestic battery. *Id.* The domestic battery charge was later dismissed, but the OP violation was not. *Id.*

Plaintiff's MSR was revoked and he has been imprisoned since his arrest on September 26, 2012 (Doc. 1, p. 6). Plaintiff appeared before the Illinois Prisoner Review Board on May 14, 2013, and he was to have another conference with the Board in June 2013 regarding the revocation of his MSR (Doc. 1, p. 10). The complaint does not indicate whether a determination has been made on the remaining duration of Plaintiff's incarceration.

Plaintiff asserts that Defendant Teverbaugh and the Defendant Field Service Department Supervisor of the Illinois Department of Corrections ("IDOC") did not properly investigate his placement with Ms. Sherwood (*See* Doc. 1, pp. 5–6). Plaintiff claims that he was only allowed to reside with Ms. Sherwood because she used Plaintiff's last name in a phone conversation with the IDOC Field Service Dept. and falsely stated that she was Plaintiff's wife (Doc. 1, pp. 5, 10). However, according to Plaintiff, his "master file" indicates that Christian Morgan is his wife, and

the IDOC Field Service Dept. did not require Ms. Sherwood to show any form of identification as verification (Doc. 1, p. 10). Plaintiff essentially argues that if the IDOC Field Service Dept. had properly investigated his housing arrangement, they would have discovered the existence of the OP, and Plaintiff would not have wound up in a situation where he could violate the OP or his MSR conditions. Plaintiff claims that the failure to properly investigate was "a clear lasp [sic] in judgment on the IDOC . . . which caused my unlawful arrest and incarceration" (Doc. 1, pp. 5, 10). In this action, he seeks compensation for this "false arrest" and the violation of his constitutional rights (Doc. 1, p. 7).

Plaintiff further claims that he has been subjected to double jeopardy because he had previously been arrested on August 28, 2012 by O'Fallon Police in a Wal-Mart parking lot for violation of the Order of Protection (Doc. 1, pp. 5–6). It appears Plaintiff was not taken into custody at the time of that first arrest (*See* Doc. 1). He was arraigned on the August 28th charge on October 4, 2012, after he was taken into custody on September 26, 2012 for violating the OP (Doc. 1, p. 6). Plaintiff also claims that after his arrest on September 26th, he spent about two and a half months in the St. Clair County Jail, where he contracted scabies (Doc. 1, p. 7). He claims that Jail officials refused to treat him for that condition (Doc. 1, p. 7).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

For the convenience of the Court, Plaintiff's claims shall be divided into three counts as follows. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 1** – Improper MSR placement resulting in Plaintiff's alleged violation of an Order of Protection and of his MSR conditions;

**Count 2** – Double jeopardy for two arrests on the same Order of Protection violation; and

**Count 3** – Deliberate indifference to Plaintiff's medical need for treatment of scabies.

After fully considering the allegations in Plaintiff's complaint, the Court concludes that he has failed to articulate a colorable federal cause of action against any of the named Defendants on any of the above counts. The complaint shall therefore be dismissed. However, Plaintiff shall be given leave to file an amended complaint as to Count 3, as outlined below, if he wishes to pursue that claim.

### Dismissal of Count 1

Plaintiff's account of the events leading up to his MSR placement indicates that the Defendants who approved that placement may indeed have erred in their decision to house him with Ms. Sherwood. In essence, Plaintiff argues that they had a duty to place him in a residence where he would not be in violation of the law or his MSR conditions because of the circumstances of another household member. Whether or not the Court accepts this premise, the complaint does not suggest that any Defendant intentionally set Plaintiff up for arrest. At worst, the failure of parole officials to discover the existence of the Order of Protection, or to realize that Plaintiff was not in fact married to Ms. Sherwood, would indicate negligence in their execution of their responsibilities in Plaintiff's case. Indeed, Plaintiff himself describes their failure to conduct an adequate investigation as "negligence" in the grievance he filed over this matter (Doc. 1, p. 10).

The law is clear that negligent acts do not violate the Constitution, thus a defendant cannot be held liable under § 1983 for negligence. "[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *see also Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995). The complaint therefore fails to state a constitutional claim upon

which relief may be granted against Defendant Teverbaugh or the IDOC Field Services Department Supervisor.

Plaintiff makes no specific allegations against Defendant Chaney in the body of his complaint, but notes that she is a Parole Agent Supervisor (Doc. 1, p. 2). If Plaintiff is attempting to hold Defendant Chaney liable as a supervisor for an alleged constitutional violation committed by Defendant Teverbaugh, he cannot do so. Defendant Teverbaugh's actions did not violate the Constitution in the first place., and the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted).

Accordingly, Count 1 shall be dismissed with prejudice.

**Dismissal of Count 2**

Plaintiff implicates an unnamed O'Fallon Police Officer and St. Clair County/20th Circuit (the Illinois state circuit court) in his claim that he has been improperly subjected to two prosecutions for the same offense (the OP violations). He insists that he is innocent of any violation of the order of protection, and should not be subjected to any further incarceration.

Based on the facts presented, Plaintiff's claim for monetary damages based on the alleged improper arrests and imprisonment is not cognizable in this civil rights action at this time.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has

> already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (emphasis in original). "We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action. Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.* at 489.

It is not clear from Plaintiff's complaint whether either of his arrests (on August 28, 2012, and on September 26, 2012) has resulted in a new conviction. One or both incidents did cause Plaintiff to be taken back into custody following his initial release on MSR, but it is also not clear whether there has been a final determination on the revocation of Plaintiff's parole. Either way, Plaintiff must pursue the avenues open to him in state court or with the Prisoner Review Board before seeking redress in this Court. His claim for damages rests on the premise that his arrest and imprisonment for the OP violation was improper and unconstitutional. Under *Heck*, he cannot bring a civil rights claim unless the arrest, conviction, or parole revocation has first been invalidated. No such invalidation has occurred. Thus, Count 2 shall be dismissed without prejudice. Only if Plaintiff succeeds in obtaining a reversal, expungement, or invalidation of his arrest/conviction on the OP violation or of the parole (MSR) revocation, might he have grounds to bring a civil rights claim for damages.

Plaintiff shall note that he may challenge his conviction or incarceration in a federal habeas corpus action pursuant to 28 U.S.C. § 2254, but only after he has presented all of his claims to the Illinois courts. Ordinarily, this will involve raising every issue at trial or in a post-conviction motion, and appealing any adverse decisions to the Illinois Appellate Court and the

Illinois Supreme Court.

**Dismissal of Count 3**

In his prayer for relief, Plaintiff briefly mentions the refusal of St. Clair County Jail staff to provide him with any treatment for scabies during his detention in that facility. However, he does not include any medical providers or individuals from whom he requested treatment among the Defendants in this action. Nor does he indicate that any of the named Defendants had any responsibility to treat his medical needs. Thus, the complaint fails to state a claim for deliberate indifference to a medical condition, and Count 3 shall also be dismissed without prejudice.

If Plaintiff wishes to pursue the claim in Count 3, he shall be given one opportunity to submit an amended complaint *on this claim only* to present any factual allegations that may exist to support the claim that jail officials were deliberately indifferent to his scabies. If the amended complaint still fails to state a claim, or if Plaintiff does not submit an amended complaint, the entire case shall be dismissed with prejudice, and the dismissal shall count as a strike pursuant to § 1915(g). Nothing in this order shall be construed as an opinion on the potential merits of such a claim; the amended complaint shall be subject to review pursuant to 28 U.S.C. § 1915A.

**Pending Motions**

Plaintiff's motions for recruitment of counsel (Doc. 3) and motion for service of process at government expense (Doc. 4) shall be held in abeyance pending the receipt and review of an amended complaint.

**Disposition**

The Complaint (Doc. 1) is **DISMISSED. COUNT 1** is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. **COUNTS 2 and 3** are **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted. Defendants **ST.**

**CLAIR COUNTY/20th CIRCUIT, ILLINOIS DEPARTMENT OF CORRECTIONS – FIELD SERVICES DEPARTMENT SUPERVISOR, O'FALLON POLICE OFFICER, TEVERBAUGH,** and **CHANEY** are **DISMISSED with prejudice** from this action.

**IT IS FURTHER ORDERED** that, should he wish to proceed with **Count 3** in this case, Plaintiff shall file his First Amended Complaint, stating any facts which may exist to support the deliberate indifference claim in Count 3 and naming the individual Defendant(s) directly responsible for the alleged constitutional deprivations, within 35 days of the entry of this order (on or before September 11, 2013). An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must stand on its own, without reference to any other pleading. Should the First Amended Complaint not conform to these requirements, it shall be stricken. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. Failure to file an amended complaint shall result in the dismissal of this action with prejudice. Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:  August 7, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge